1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEITH M. CASSELLS,

11          Plaintiff,                    No. CIV S-04-1798 FCD EFB P

12     vs.

13   DR. MEHTA, et al.,

14          Defendants.                   ORDER

15   _____/

16          Plaintiff is a prisoner without counsel seeking relief for civil rights violations.  *See* 42

17   U.S.C. § 1983.  On September 25, 2007, the court granted defendants' July 21, 2006 motion for

18   summary judgment.  The Clerk of the Court entered judgment, and plaintiff timely filed a notice

19   of appeal.  28 U.S.C. § 1915(a)(3).  The appellate court has requested that this court determine

20   whether the appeal is taken in good faith.  For the reasons explained below, the court finds that

21   the appeal is not taken in good faith.

22   **I.     Standards and Analysis**

23          An appeal not taken in good faith is one that is frivolous, meaning the result is obvious or

24   the arguments are wholly without merit.  See Cannon v. Hawaii Corp. (In re Hawaii Corp.), 796

25   F.2d 1139, 1144 (9th Cir.1986) (quoting  Libby, McNeill and Libby v. City National Bank, 592

26   F.2d 504, 515 (9th Cir.1978); Jaeger v. Canadian Bank, 327 F.2d 743, 746 (9th Cir.1964).  Since

1

1    this court granted defendants' motion for summary judgment, the appellate court will review this

2    case *de novo*.  Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1126 (9th Cir.2001).

3         This action proceed in this court on the September 15, 2004 verified complaint in which

4    plaintiff claims that: (1) defendants Andreasen, Mehta, Donahue and Bick were deliberately

5    indifferent to plaintiff's serious medical needs by delaying for seven months before sending

6    plaintiff for a second follow-up appointment for disc fusion surgery; (2) defendants Dr. Mehta

7    and Dr. Bick failed in December 2003 to provide plaintiff with an eggcrate mattress to ease

8    discomfort in plaintiff's arms, hands, and neck; and (3) Dr. Mehta was deliberately indifferent to

9    plaintiff's neck condition by substantially delaying "revision surgery" on plaintiff's neck.

10        Plaintiff conceded that he sued defendants Andreasen, Donahue and Bick in their

11   supervisory capacity and that not one of them was a primary care physician responsible for

12   dictating or directing plaintiff's care.  Ordinarily, a person is subject to liability under 42 U.S.C.

13   § 1983 if he commits or directs an act or omission that violates a plaintiff's constitutional rights.

14   *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

15   Cir. 1989).  "Supervisory liability exists even without overt personal participation in the

16   offensive act if supervisory officials implement a policy so deficient that the policy itself is a

17   repudiation of constitutional rights and is the moving force of the constitutional violation."

18   Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989) (quotation marks and citation omitted).  To

19   hold a supervisor liable for the unconstitutional acts of his subordinates, there must be a "causal

20   connection between the supervisor's wrongful conduct and the constitutional violation."

21   Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  This

22   connection may be established by showing the supervisor personally participated in or directed

23   the violation, Taylor, 880 F.2d at 1045, implemented a policy so deficient as to be the moving

24   force of the violation, Hansen, 885 F.2d at 646, or by omitting to perform an act he was legally

25   required to do, Johnson, 588 F.2d at 743, such as failing to take adequate steps to address a

26   violation of which he knew or should have known.  See Jones v. Williams, 297 F.3d 930, 937 &

2

fn. 4 (9th Cir. 2002).  Therefore, to survive summary judgment with respect to his claims against Andreasen, Donahue and Bick, plaintiff had to adduce evidence that they were involved in an Eighth Amendment violation in one of these ways.

Prison officials violate the Eighth Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate." See Helling v. McKinney, 509 U.S. 25, 35 (1993); Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  Deliberate indifference "may be manifested in two ways.  It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury.  See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.2d 1133, 1136 (9th Cir.1997) (en banc); see also Wood v. Housewright, 900 F.2d 1332, 1334-35 (9th Cir.1990).  The prolonged experience of pain while waiting for medical attention can establish deliberate indifference.  See Hunt. Dental Dep't, 865 F.2d 198, 200-01 (9th Cir.1989) (concluding that allegations of three-month delay in replacing dentures, which caused pain to prisoner, stated a claim of deliberate indifference).  However, the question of whether additional treatment is necessary "is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Prison physicians will not be found to have been deliberately indifferent with respect to such a decision as long as the decision is medically acceptable under the circumstances.  See Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir. 1996) ("Where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically

1  acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a
2  matter of law.").

3      **A.  Seven Month Delay Between Appointments with Dr. Remington**

4          As noted above, plaintiff alleged that defendants Andreasen, Mehta, Donahue and Bick
5  were deliberately indifferent to plaintiff's serious medical needs by causing a seven-month delay
6  between appointments with Dr. Remington.  Defendants Andreasen, Mehta, Donahue and Bick
7  contended that there is no genuine dispute about whether they were deliberately indifferent to
8  plaintiff's serious medical needs.  They assert there is no evidence that they knew of Dr.
9  Remington's request but delayed approving it.  It was undisputed that on August 14, 2002, Dr.
10 Remington requested that plaintiff return within 90 days and that plaintiff did not see Dr.
11 Remington again until at least April 2, 2003.  To determine whether any of these defendants are
12 subject to liability, the court determined whether there was evidence that any of them knew of
13 Dr. Remington's recommendation.

14         Dr. Mehta was one of plaintiff's treating physicians.  Plaintiff's primary care physician
15 was notified of Dr. Remington's request.  The court assumed, *arguendo,* that Dr. Mehta was the
16 primary care physician and he knew of the request.  But it was undisputed that the UMC was
17 responsible for arranging the appointment and that it was not aware of the request.  Plaintiff
18 submitted no evidence that the primary care physician could circumvent the UMC and make an
19 appointment for a prisoner to see a specialist outside the prison.  Thus, even if Dr. Mehta was
20 responsible for conveying the request to the UMC (and there was no evidence to this effect), he
21 would be subject to liability only if he intentionally refused to convey it or did something to
22 interfere with the granting of the request once conveyed.  As the party with the burden of proof
23 at trial, plaintiff had the burden of adducing evidence on this point in summary judgment
24 proceedings.  Plaintiff failed in this regard.  While Dr. Mehta may have been careless,
25 negligence is not co-equal with deliberate indifference.  Estelle, 429 U.S. at 106.  This court
26 found that on the evidence before it, a reasonable jury could not find that defendant Mehta,

4

1   despite knowing of Dr. Remington's August 14, 2002 request, interfered with plaintiff's

2   treatment by intentionally refusing to convey the request to the UMC or by interfering with the

3   request after it was conveyed.  Thus, defendant Dr. Mehta is entitled to judgment as a matter of

4   law on this claim.

5          Plaintiff also failed to satisfy his burden on this claim with respect to Andreasen.  It was

6   undisputed that Andreasen became aware that Dr. Remington's request for a follow-up

7   examination had not been fulfilled once plaintiff filed his grievance.  In response, Dr. Andreason

8   promised that the papers required for the follow-up appointment would be processed.  In less

9   than 20 days, plaintiff returned to Dr. Remington.  Plaintiff submitted no evidence that Dr.

10  Andreasen, who was on the UMC, knew of Dr. Remington's request before plaintiff filed the

11  grievance.  In fact, Dr. Remington's April 2, 2003, report was not timely placed into plaintiff's

12  medical file.  There was no evidence about who was responsible for filing and distributing these

13  records.  The court found that on this evidence, no reasonable jury could find that Dr. Andreasen

14  was the responsible individual.  Thus, Dr. Andreasen was entitled to judgment as a matter of law.

15         With respect to defendant Donahue, the outcome was the same.  Plaintiff asserted that he

16  notified defendant Donahue in passing that his appointment with Dr. Remington was delayed.

17  Defendant Donahue submitted evidence that his only involvement was to interview plaintiff

18  about the lack of a follow-up appointment and to relate that information to Dr. Andreasen.  Even

19  if plaintiff did notify defendant Donahue in passing, the consequence of this fact was a matter of

20  pure speculation.  There was no evidence that Donahue was in a position to ensure that the

21  appointment was made.  He may have forgotten to convey the information to a person with such

22  authority.  He might not have realized the significance of the information at the time.  He might

23  have told a superior, who himself failed to act.  There are a number of speculative possibilities.

24  But a genuine issue of material fact cannot be based on speculation.  It must be based on

25  evidence that could justify a judgment or verdict in favor of the non-moving party over the issue

26  in question.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 252.  On the evidence in the

1  record, no reasonable jury could find in plaintiff's favor on this issue.  Therefore, defendant

2  Donahue is entitled to judgment as a matter of law on this claim.

3  Finally, the court found that there was no genuine issue for trial about defendant Bick's

4  involvement.  The evidence showed that Dr. Bick did nothing with respect to plaintiff's health

5  care until April 15, 2003, when he signed an evaluation finding that plaintiff had degenerative

6  disc disease.  There was no evidence that either of these defendants in any way caused the delay

7  between plaintiff's August 14, 2003, appointment with Dr. Remington and the recommended

8  follow-up appointment.  No reasonable jury could find for plaintiff, and defendants Donahue and

9  Bick were entitled to judgment as a matter of law.

10  **B.  Delay of Surgery**

11  Plaintiff claimed that defendant Dr. Mehta delayed the revision surgery that Dr.

12  Remington suggested.  Dr. Mehta contended that there was no evidence that he caused the delay.

13  Dr. Remington raised the specter of revision surgery in his letter dated September 29, 2003.  He

14  also recommended that plaintiff undergo a "discogram" before deciding whether to proceed with

15  surgery.  It is undisputed that plaintiff did not undergo the surgery until a year later, on

16  September 29, 2004.  Defendants submitted evidence that the MAR committee wanted other

17  opinions about the necessity of surgery and about whether plaintiff was a suitable candidate for it

18  before approving the surgery.  Therefore, the committee referred plaintiff to a neurologist, Dr.

19  Capazzolli, and to a surgeon at UCSF-MC, Dr. Larson.  There was no evidence that Dr. Mehta

20  was on the MAR.  Nor was there any evidence that seeking these opinions was contraindicated

21  in plaintiff's case.  On this evidence, no reasonable jury could have found that Dr. Mehta knew

22  plaintiff required revision surgery, but acted to either directly or indirectly cause delay.

23  Therefore, defendant Mehta was entitled to judgment as a matter of law on this claim.

24  **C.  Denial of Eggcrate Mattress**

25  Plaintiff claimed that in December 2003, defendants Mehta and Bick failed to provide

26  plaintiff with an eggcrate mattress to ease discomfort in his arms, hands and neck.  Defendants

contended that there was no evidence they knew that failing to renew plaintiff's authorization for an eggcrate mattress posed a serious risk to plaintiff's health.  Defs.' Mot. for Summ. J., at 11.  It was undisputed that about seven months before plaintiff's initial surgery, the Chief Medical Officer[1] authorized plaintiff to have an eggcrate mattress and to have a cervical pillow for herniated dics in plaintiff's neck, and that about two weeks after the surgery the Chief Medical Officer approved plaintiff's use of a wedge pillow because of the surgery.  On December 5, 2003, Dr. Mehta recommended plaintiff have an eggcrate mattress for bed sores.  Dr. Bick denied the mattress because plaintiff was not prone to bedsores.  It was not clear from the record why plaintiff was given an eggcrate mattress for herniated cervical discs if such a mattress is not medically indicated for this condition.  However, nothing in the record suggested that plaintiff's post-operative condition made the special mattress a medical necessity.  Thus, no reasonable jury could have concluded that Dr. Mehta was deliberately indifferent by recommending an eggcrate mattress for bedsores and not plaintiff's post-operative condition.  Neither could a reasonable jury have found that Dr. Bick was deliberately indifferent by refusing to authorize the mattress.  Therefore, defendants Mehta and Bick are entitled to judgment as a matter of law.

### D.  Absence of Allegations Against Defendant Khoury

The court found that it was unclear why plaintiff named Nadim K. Khoury as a defendant.  The complaint makes no specific allegations against him.  Because plaintiff failed  to state a claim against defendant Khoury, judgment was entered in this defendant's favor as well.

## II.    Plaintiff's Objections to the Findings and Recommendations

Plaintiff offered no valid legal or factual basis for rejecting the magistrate judge's findings and recommendations.  Thus, the undersigned adopted them in full, granted defendants' motion and directed that judgment be entered in their favor.  Without plaintiff having made any objection arguably showing that the magistrate judge's decision was erroneous in some regard,

---

[1]  The signature is illegible.

1  he cannot make any successful argument on appeal.  Thus, the court finds that the outcome of the

2  appeal is obvious and it is not taken in good faith.

3      Accordingly, the court finds that plaintiff's appeal is not taken in good faith.  The Clerk

4  is directed to serve a copy of this order on the U.S. Court of Appeals for the Ninth Circuit.

5  Dated: December 5, 2007.

6

7  _____

8  FRANK C. DAMRELL, JR.
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26